**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------ x
LAGUERRE LENSENDRO,            :
                              :
        Plaintiff,            :
v.                            :  Civil No. 3:25-cv-128 (AWT)
                              :
TRANSUNION LLC,               :
                              :
        Defendant.            :
                              :
------------------------------ x
```

**RULING GRANTING MOTION FOR LEAVE TO PROCEED**
**IN FORMA PAUPERIS AND DISMISSING CASE**

Pro se plaintiff Laguerre Lensendro ("Lensendro") brings a three-count complaint against defendant TransUnion LLC ("TransUnion"), claiming violations of the Fair Credit Reporting Act (the "FCRA"), codified as amended at 15 U.S.C. §§ 1681 et seq.. The plaintiff has also filed a motion to proceed in forma pauperis.

For the reasons stated below, the court is granting the motion to proceed in forma pauperis and dismissing the complaint pursuant to 28 U.S.C. § 1915(e)(2).

**I.   MOTION TO PROCEED IN FORMA PAUPERIS**

Section 1915 of Title 28 of the United States Code provides, in pertinent part:

> [A]ny court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who

> submits an affidavit that includes a statement of all
> assets such [person] possesses [and] that the person is
> unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1). The court determines whether an

applicant is indigent by reviewing the applicant's assets and

expenses as stated on a declaration submitted with the motion to

proceed in forma pauperis. Here, the plaintiff, through his

financial affidavit, has demonstrated to the court an inability

to pay for the commencement of this action. Accordingly, the

court is granting the plaintiff's motion to proceed in forma

pauperis.

The same statute that authorizes the court to grant in

forma pauperis status to an indigent plaintiff also provides

that the court "shall dismiss the case at any time if [it]

determines that . . . the action . . . (i) is frivolous or

malicious; (ii) fails to state a claim on which relief may be

granted; or (iii) seeks monetary relief against a defendant who

is immune from such relief." 28 U.S.C. § 1915(e)(2).

Therefore, the court must review the complaint in this case

to determine whether this action is frivolous or malicious,

fails to state a claim on which relief may be granted, or seeks

monetary relief against a defendant who is immune from such

relief.

## II.  FACTUAL ALLEGATIONS IN THE COMPLAINT

The court must accept as true the factual allegations in

the Amended Complaint for purposes of testing its sufficiency.
See Monsky v. Moraghan, 127 F.3d 243, 244 (2d Cir. 1997). It
contains the following allegations.

The complaint alleges that the plaintiff is a "consumer"
and that TransUnion is a "consumer reporting agenc[y]" within
the meaning of the FCRA. Compl. (ECF No. 1) ¶¶ 2, 6. See 15
U.S.C. § 1681a(c) ("'consumer' means an individual"); 15 U.S.C.
§ 1681a(f) ("'consumer reporting agency' means any person which,
for monetary fees, dues, or on a cooperative nonprofit basis,
regularly engages in whole or in part in the practice of
assembling or evaluating consumer credit information or other
information on consumers for the purpose of furnishing consumer
reports to third parties . . . ").

"On December 5, 2023," the plaintiff "sent a written
dispute to TransUnion highlighting specific discrepancies within
multiple accounts" listed in the plaintiff's consumer report,
which was assembled by TransUnion. Compl. ¶¶ 3, 12. The
plaintiff's "dispute letter identified and numbered each
discrepancy, which pertained to TransUnion's reporting." Id. ¶
13. Exhibit 1 appended to the complaint is the communication
from the plaintiff to TransUnion disputing the information in
his consumer report. See id. at 16-31 (Pl. Ex. 1).[1] The

_____

[1] The page numbers to which this ruling cites for documents
that have been electronically filed refer to the page numbers in

plaintiff's communication detailed over 400 perceived discrepancies and inaccuracies, which can be categorized in the following manner.

First, the plaintiff stated that several of the notations in the report, which associated the plaintiff with one particular address, one particular employer, and several telephone numbers, were inaccurate, and he informed TransUnion that he should not be associated with them. See id. at 16 ("I do not, nor have I ever lived at 133 Tressor blvd apt 12C Stamford CT,06901-3148"; "I do not have the phone # 475-489-0731"; "I do not work at MCdonalds").

Second, the plaintiff stated that certain credit account numbers and the social security number listed in his report were inaccurate because the report displayed those numbers only partially and used asterisks to represent the remainder of those numbers. See, e.g., id. at 16, 19, 25, 29, 31 ("The account number is incomplete and inaccurate, as it is missing the last 4 digits.")

Third, the plaintiff stated that the dollar amounts listed

_____

the header of the documents and not to the page numbers in the original documents, if any. Here, the filing containing the complaint also contains all exhibits appended thereto. Therefore, pin citations to paragraphs within the complaint refer to specific parts of the complaint, whereas pin citations to pages of the same filing refer to the exhibits appended therein.

throughout the report were "incomplete and therefore inaccurate" because those amounts appeared in the report without decimal points, which could indicate, for any dollar amount, the corresponding amount of cents, if any. Id. at 16. See, e.g., id. ("The balance is not $3,858 but rather $3,858.00."; "The high balance is not $1,117 from 05/2023 to 06/2023 but rather $1,117.00.").

Fourth, the plaintiff stated that the report did not contain certain types of information, such as credit account balances and past due amounts, for each month during which the account was open. See, e.g., id. at 17 ("The balance is missing for December 2021."; "The balance is missing for January 2022."; "The balance is missing for February 2022."; "The past due amount for the month of December 2021 is missing"; "The past due amount for the month of January 2022 is missing"; "The past due amount for the month of [F]ebruary 2022 is missing"); id. at 18 ("The Scheduled payment for the month of December 2021 is not shown"; "The Scheduled payment for the month of January 2022 is not shown").

Fifth, the plaintiff stated that his report should not show balances remaining on accounts that had been "charged off" or otherwise closed, and that any notations to the contrary must be inaccurate. See, e.g., id. at 19 (asking, in regard to a Bank of America account, "how can there be a high balance when the

account is charged off?" and "If the account was closed in 2022;

why is there a high balance stated in November 20223 [sic]?").

The plaintiff questioned why the report shared information, such

as the applicable credit limit, on closed accounts. See, e.g.,

id. ("if the account was closed in 2022, how can there be a

credit limit of $500?").

   Sixth, the plaintiff stated that a Bank of America credit

account "was paid in full," so his report should not display

that it was "charged off", and asked "Why does it not reflect

that the whole amount was paid". Id. at 23.

   Exhibit 2 appended to the complaint appears to be a portion

of TransUnion's investigation results and response to the

plaintiff's dispute letter. See id. at 32-46. The response is

dated December 23, 2023. See id. at 32. In addition to informing

the plaintiff that the "investigation of the dispute [he]

submitted is now complete", the correspondence shares the

results of the investigation, the changes made to the

plaintiff's report as a result of the investigation, and the

steps the plaintiff could take if the "investigation has not

resolved [the] dispute." Id. at 32, 36-44. With respect to each

account covered by the plaintiff's dispute letter, TransUnion's

response states which, if any, information fields were updated

as a result of the investigation. See, e.g., id. at 36 ("We

investigated the information you disputed and updated: Balance;

Past due; Pay Status; Terms; Remarks; Maximum Delinquency; Payment Received; Historical Trended Data."; "We investigated the information you disputed and updated: Remarks; Rating."); id. at 38 ("We investigated the information you disputed and the disputed information was VERIFIED AS ACCURATE; however, we updated: Date Updated; Rating; Historical Trended Data."). TransUnion's response also stated that changes were made to the plaintiff's listed address and telephone number in "response to [the plaintiff's] request". Id. at 39. With respect to the Bank of America credit account that the plaintiff claimed "was paid in full" and therefore should not bear the notation "charged off", id. at 23, TransUnion changed the notation on the account to "Account paid in Full; was Charge-off." Id. at 36.

TransUnion did not change the manner in which it displayed dollar amounts, i.e., without a decimal or a corresponding amount of cents. See, e.g., id. at 38 ("High Balance: $484"; Original Charge-off: $268"; "Balance: $150"). TransUnion's response includes a glossary of terms such as "Credit Limit", "High Balance", "Maximum Delinquency", and "Original Charge Off". Id. at 33 (defining "High Balance" as the "highest amount ever owed on an account", which is unaffected by the current "Balance", i.e., the "balance owed as of the date the account was verified or reported").

On January 6, 2025, the plaintiff "pulled another report,

and the issues raised in [his] original correspondence to TransUnion from 12/05/2023 were still prevalent in the file more than a year later." Id. ¶ 15. See, e.g., id. ¶ 30 (although an "account was charged off and closed in May of 2022 . . . ., a past due amount is reported for the period from December 2023 through December 2024."). In addition, the plaintiff states that for several of the informational fields in his credit report "TransUnion has listed dash marks ('---')", instead of a specific numerical value. Id. ¶¶ 17, 19, 21, 25, 27, 29, 36, 38. The plaintiff alleges that he has "suffered significant harm" as "a direct result of TransUnion's actions," and the alleged inaccurate and incomplete information has made "it difficult to obtain credit, incur debt and acquire property". Id. ¶ 68.

**III. LEGAL STANDARD**

In determining whether an action "fails to state a claim on which relief may be granted" under 28 U.S.C. § 1915(e)(2)(B)(ii), courts use the standard established for Federal Rule of Civil Procedure 12(b)(6). See, e.g., Sykes v. Bank of Am., 723 F.3d 399, 401, 403 (2d Cir. 2013) (using the Rule 12(b)(6) standard to review a sua sponte dismissal for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)). "Although courts must read pro se complaints with 'special solicitude' and interpret them to raise the 'strongest arguments that they suggest,'" pro se litigants must nonetheless "plead

-8-

'enough facts to state a claim to relief that is plausible on its face.'" Anthony v. Med. Staff at Inst., 409 F. Supp. 3d 102, 104 (E.D.N.Y. 2016) (quoting Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474-76 (2d Cir. 2006); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). But a complaint will be dismissed when "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief.'" Twombly, 550 U.S. at 558. In determining whether a complaint should be dismissed for failure to state a claim, "a court may consider 'documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (citation omitted).

In determining whether a claim "is frivolous" under 28 U.S.C. § 1915(e)(2)(B)(i), courts consider whether the claim "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). The "function" of this provision, which is separate and distinct from that of 28 U.S.C.

§ 1915(e)(2)(B)(ii), is to "accord[] judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Id. at 327. "Holding a pro se plaintiff to less stringent standards than a plaintiff represented by counsel, and considering all of the allegations as truthful, the complaint must be frivolous on its face or wholly insubstantial to warrant sua sponte dismissal." Moorish Sci. Temple of Am., Inc. v. Smith, 693 F.2d 987, 989-90 (2d Cir. 1982) (citations omitted).

## IV. MERITS OF THE COMPLAINT

For the reasons set forth below, Counts 1, 2, and 3 each fail to state a claim on which relief can be granted, and the complaint is being dismissed with leave to amend pursuant to 28 U.S.C. § 1915(e)(2).

### A. Count 1: Claim under 15 U.S.C. § 1681i(a)(5)

In Count 1, the plaintiff claims that the defendant violated 15 U.S.C. § 1681i(a)(5) by failing to delete or modify certain inaccuracies that appeared in the plaintiff's credit report and then were identified by the plaintiff in his dispute letter. See Compl. at ¶¶ 47-51. The plaintiff alleges that despite TransUnion's obligation to "delete or modify any information in [his] consumer report found to be inaccurate,

incomplete, or unverifiable after conducting a reasonable investigation", the information that was disputed by the plaintiff in his December 2023 letter to TransUnion still appeared in his report as of January 2025. Id. ¶¶ 49-50.

"The [FCRA] regulates credit reporting procedures to ensure the confidentiality, accuracy, relevancy, and proper utilization of consumers' information." Sprague v. Salisbury Bank & Tr. Co., 969 F.3d 95, 98 (2d Cir. 2020) (citation omitted). Thus, the focus is on procedures. Contrary to the plaintiff's contentions, Section 1681i does not require consumer reporting agencies, following a reinvestigation, to reach the same conclusions as the consumer, to incorporate into a consumer report information the agency has determined to be inaccurate, or to remove from a consumer report information the agency has confirmed to be accurate.

The FCRA contemplates that consumer reporting agencies will, at times, disagree with consumers regarding disputed information. Section 1681i provides that when any disputed information is "reinserted in the file by the consumer reporting agency" following the reinvestigation's confirmation of its accuracy, the consumer reporting agency "shall notify the consumer of the reinsertion in writing not later than 5 business days after the reinsertion" and provide "notice that the consumer has the right to add a statement to the consumer's file

disputing the accuracy or completeness of the disputed information." 15 U.S.C. §§ 1681i(a)(5)(B)(ii)-(iii). See also 15 U.S.C. § 1681i(a)(3) ("[A] consumer reporting agency may terminate a reinvestigation of information disputed by a consumer . . . if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information."); 15 U.S.C. §§ 1681i(a)(6)-(7)("A consumer reporting agency shall provide written notice to a consumer of the results of a reinvestigation . . . not later than 5 business days after the completion of the reinvestigation"); 15 U.S.C. §§ 1681i(c) ("Whenever a statement of a dispute is filed, unless there is reasonable grounds to believe that it is frivolous or irrelevant, the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof.").

Here, the factual allegations in the complaint, taken as true and with reasonable inferences drawn in the plaintiff's favor, do not suggest that TransUnion failed to comply with the procedures required by 15 U.S.C. § 1681i. If anything, the documents attached to the complaint as exhibits suggest that

TransUnion complied with the procedural requirements under §
1681i. Therefore, the complaint fails to state a claim with
respect to Count 1, and it is being dismissed pursuant to 28
U.S.C. § 1915(e)(2).

### B. **Count 2: Claim under 15 U.S.C. § 1681e**

In Count 2, the plaintiff claims that TransUnion violated
15 U.S.C. § 1681e(b) by failing to adopt and implement
reasonable procedures to ensure the maximum possible accuracy of
the information in his credit report. See Compl. ¶¶ 52-59. In
support of this claim, the plaintiff cites to the "numerous
instances of missing or incomplete data, such as balances, past
due amounts, and scheduled payments for multiple months";
"conflicting information, such as accounts being reported as
both charged off and closed while simultaneously showing
balances and past due amounts for months after the reported
closure date"; and other "discrepancies." Id. ¶¶ 55-57. The
plaintiff claims that the "presence of these inaccuracies . . .
demonstrates that TransUnion did not follow reasonable
procedures to ensure maximum possible accuracy". Id. ¶ 58.

"[T]o prevail on a section 1681e claim against a consumer
reporting agency, it is necessary for a plaintiff to establish,
among other things, that a credit report contains an
inaccuracy." Mader v. Experian Info. Sols., Inc., 56 F.4th 264,
269 (2d Cir. 2023). "If the information is accurate no further

inquiry into the reasonableness of the consumer reporting agency's procedures is necessary." Houston v. TRW Info. Servs., Inc., 707 F. Supp. 689, 691 (S.D.N.Y. 1989).

"[A] credit report is inaccurate 'either when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect.'" Mader, 56 F.4th at 269 (quoting Shimon v. Equifax Info. Servs. LLC, 994 F.3d 88, 91 (2d Cir. 2021)). A report becomes "sufficiently misleading" where "the reported information is 'open to an interpretation that is directly contradictory to the true information.'" Mohnkern v. Equifax Info. Servs., LLC, No. 19-CV-6446L, 2021 WL 5239902, at *4 (W.D.N.Y. Nov. 10, 2021) (quoting Wenning v. On-Site Manager, Inc., No. 14-cv-9693 (PAE), 2016 WL 3538379, *9 (S.D.N.Y. June 22, 2016)).

A plaintiff is required to "identify the specific information on [her] credit report that is inaccurate and explain why the identified information is inaccurate." Lopez v. Equifax, Inc., No. 24-CV-3681 (LTS), 2024 WL 4108645, at *3 (S.D.N.Y. Aug. 26, 2024) (citation omitted and emphasis added). See, e.g., Viverette v. Experian, No. 21-CV-6989 (LTS), 2022 WL 357274, at *3 (S.D.N.Y. Feb. 7, 2022) ("'Absent additional facts explaining why the disputed information and inquiries are false, Plaintiff has failed to plead an essential element of a claim

under Section 1681e(b) . . . .'" (quoting <u>Phipps v. Experian</u>,
No. 20-CV-3368 (LLS), 2020 WL 3268488, at *3 (S.D.N.Y. June 15,
2020)).

Where courts have determined that consumer reports were, in
fact, inaccurate due to a consumer reporting agency's failure to
include certain omitted information, plaintiffs have alleged
facts which show that the omission of that particular
information could "'be expected to have an adverse effect.'"
<u>Mader</u>, 56 F.4th at 269 (quoting <u>Shimon</u>, 994 F.3d at 91). <u>See,</u>
<u>e.g.,</u> <u>Watson v. Caruso</u>, 424 F. Supp. 3d 231, 245-46 (D. Conn.
2019) (denying motion for summary judgment where the plaintiff
alleged his credit report listed a "sexual assault" conviction
that had been formally "erased"); <u>Obabueki v. Int'l Bus.</u>
<u>Machines Corp.</u>, 145 F. Supp. 2d 371, 374, 399 (S.D.N.Y. 2001)
(denying defendant's motion for summary judgment where the
plaintiff alleged the defendant failed to include notation on
his report that the "plaintiff's conviction was 'vacated' and
'dismissed'"); <u>Kilpakis v. JPMorgan Chase Fin. Co., LLC</u>, 229 F.
Supp. 3d 133, 142 (E.D.N.Y. 2017) ("[T]he selective information
provided . . was 'misleading in such a way and to such an extent
that it can be expected to adversely affect credit decisions.'"
(citation omitted)).

Here, the factual allegations in the complaint, taken as
true and with reasonable inferences drawn in the plaintiff's

favor, do not suggest that "that the challenged report is inaccurate" and TransUnion failed to comply with 15 U.S.C. § 1681e(b). <u>Sessa v. Trans Union, LLC</u>, 74 F.4th 38, 42 (2d Cir. 2023).

The plaintiff contends that the credit report was inaccurate because of the format for three reasons. First, the plaintiff disputes the omission of several numbers from the plaintiff's account information and the use of asterisks in place of those numbers. <u>See, e.g.,</u> Compl. at 16, 19, 25, 29, 31. Second, the plaintiff disputes the use of dollar amounts without decimal points plus the corresponding amounts of cents. <u>See, e.g., id.</u> at 16. Third, the plaintiff disputes the use of dashes in certain places. <u>See id.</u> ¶ 17, 19, 21, 25, 27, 29, 36. But the plaintiff alleges no facts which could show that the information and the manner in which it is conveyed make the report "'patently incorrect or . . . misleading in such a way and to such an extent that it can be expected to have an adverse effect.'" <u>Mader</u>, 56 F.4th at 269 (quoting <u>Shimon</u>, 994 F.3d at 91). Moreover, with respect to the account information, the omission was for the purpose of protecting consumers such as the plaintiff. <u>See, e.g.,</u> Compl. (Pl. Ex. 3) at 52 ("For your protection, your account numbers have been partially masked . . . . ").

The plaintiff contends that the credit report is misleading

because certain information (e.g., credit account balances and past due amounts for every month listed on the report) is missing. See Compl. ¶¶ 52-59 (citing "numerous instances of missing or incomplete data, such as balances, past due amounts, and scheduled payments for multiple months"). The plaintiff alleges no facts which could show that the credit report did not provide accurate overviews of the activity in and status of each account associated with the plaintiff because it did not provide month-by-month data on, for instance, the payments made that month by the plaintiff toward the account balance, much less that any omitted information could have an adverse effect. See, e.g., Compl. at 52-53 (Pl. Ex. 3) (listing the date an American Express account associated with the plaintiff was opened, the account type, the loan type, the total balance on the account, the date the information was updated, the pay status, the terms, the date the account was closed, the history of the credit limits placed on the account); id. at 61-62 (same for a Bank of America account associated with the plaintiff); id. at 68-60 (same for another Bank of America account associated with the plaintiff); id. at 70-72 (same for a Discover Bank account associated with the plaintiff).

The plaintiff contends that the "omissions in the file create a cascading effect, undermining the integrity of the entire file". Compl. ¶ 62. The complaint alleges:

> Each item []-- whether it is the balance, past due amount,
> scheduled payment, or other critical information -- builds
> upon the data from previous months to ensure continuity and
> accuracy. For example, if the balance for January is
> missing or incorrect, the balance for February cannot be
> accurately calculated or reported. Similarly, if the past
> due amount for March is omitted or inaccurate, the past due
> amount for April cannot be properly determined. This
> pattern continues, compounding errors and omissions
> throughout the report.

Id. However, consumer reporting agencies are not responsible for keeping or reproducing an accounting of the monthly activity in and status of each account associated with a consumer. Rather, consumer reporting agencies assemble, verify, and report information provided by creditors or others. See 15 U.S.C. § 1681a(f) (defining "consumer reporting agency" as "any person which . . . regularly engages . . . in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties . . . .").

The plaintiff contends that his report was inaccurate in multiple places because it is impossible for there to be balances, high balances, credit limits, or other account information associated with accounts that have been "charged off" or otherwise closed. This argument lacks merit for at least two reasons.

First, the closure of an account or line of credit, or its identification as being "charged off," does not itself resolve a

consumer's debt with respect to that account or eliminate any applicable balance. See generally In re Anderson, 884 F.3d 382, 385 (2d Cir. 2018) (explaining that a debt is "charged off" when "the bank changed the outstanding debt from a receivable to a loss in its own accounting books" notwithstanding the fact "that the debt remain[s] unpaid"); Ostreicher v. Chase Bank USA, N.A., No. 19-CV-8175 (CS), 2020 WL 6809059 (S.D.N.Y. Nov. 19, 2020) ("[A] creditor charging off or writing off a debt is simply an internal accounting action by which the creditor stops carrying the debt as a receivable because the chances of collecting it are so low.").

Second, consumer reporting agencies may lawfully report accurate information regarding closed accounts, discontinued lines of credit, or debts marked as charged off. See, e.g., Ciment v. TransUnion, LLC, No. 24-cv-212(CS), 2025 WL 307871, at *6 (S.D.N.Y. Jan. 27, 2025)("FCRA allows charged-off accounts to be reported for seven years . . . ." (quoting Shelton v. AmeriCredit Fin. Servs., Inc., No. 23-10543, 2023 WL 2761702, at *3 (E.D. Mich. Apr. 3, 2023))); Boyer v. TransUnion, LLC, No. 3:21-CV-00918 (KAD), 2023 WL 1434005, at *6 (D. Conn. Feb. 1, 2023) ("Plaintiff does not attempt to distinguish the instant case from the numerous others in which courts have determined that reporting historical account data on closed accounts is neither inaccurate nor misleading."); Artemov v. TransUnion,

LLC, No. 20-CV-1892 (BMC), 2020 WL 5211068, at *4-5 (E.D.N.Y. Sept. 1, 2020) ("[I]t should be obvious that, even though the banks labeled plaintiff's accounts as charged off, they had no obligation to zero out the overall or past due balance. . . . At any moment, BOA could decide to collect the charged off debt and seek the delinquent amount."); Ostreicher, 2020 WL 6809059, at *5 ("Chase here reported exactly what it should have: that Plaintiff had failed to pay on four accounts (which a potential future creditor would want to know) but had no monthly obligation on those accounts because Chase had written the accounts off (which Plaintiff would want the potential creditor to know).").

Therefore, the complaint fails to state a claim that TransUnion violated 15 U.S.C. § 1681e(b) by failing to adopt and implement reasonable procedures to ensure the maximum possible accuracy of the information in his report, and it is being dismissed pursuant to 28 U.S.C. § 1915(e)(2).

### C. **Count 3: Claim under 15 U.S.C. § 1681n**

In Count 3, the plaintiff claims that TransUnion violated 15 U.S.C. § 1681n by willfully violating the standards set forth in the FCRA. See Compl. ¶¶ 60-67. Section 1681n provides that "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer . . . ." 15 U.S.C. § 1681n(a). Thus, a

plaintiff cannot state a claim under Section 1681n unless that plaintiff has shown that the defendant has violated some other provision of the FCRA. The complaint fails to do so. Therefore, the complaint also fails to state a claim with respect to Count 3, and it is being dismissed pursuant to 28 U.S.C. § 1915(e)(2).

## V.    CONCLUSION

For the reasons set forth above, the Motion for Leave to Proceed in Forma Pauperis (ECF No. 2) is hereby GRANTED, and the claims in the plaintiff's Complaint (ECF No. 1) are hereby DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B), with leave to amend. Any amended complaint must be filed within 30 days of the date of this order.

It is so ordered.

Dated this 14th day of April 2025, at Hartford, Connecticut.

/s/ AWT
Alvin W. Thompson
United States District Judge
