U.S. District Court District of Connecticut

Laguerre Lensendro

3:25-cv-00128-AWT

V.

TransUnion LLC

Objection to courts dismissal

The court dismissed my claim under 15 U.S.C. § 1681i(a)(5) based on a fundamental misunderstanding of the law and a misreading of the record. Specifically, the court held that TransUnion complied with the Fair Credit Reporting Act because it verified the disputed information as "accurate" following its reinvestigation. But this conclusion ignores two things: first, that the statute also requires information to be "complete", not just accurate; and second, that the report I obtained more than a year after the reinvestigation showed the same data I had disputed was still missing.

In its ruling, the court wrote:

"The factual allegations in the complaint, taken as true and with reasonable inferences drawn in the plaintiff's favor, do not suggest that TransUnion failed to comply with the procedures required by 15 U.S.C. § 1681i. If anything, the documents attached to the complaint as exhibits suggest that TransUnion complied with the procedural requirements under § 1681i."

— Document 8, page 13

I respectfully disagree. The timeline and contents of the exhibits show that TransUnion did not comply with the law. Here is what happened:

On December 5, 2023, I submitted a written dispute to TransUnion identifying multiple errors in my credit report. I listed hundreds of discrepancies, including accounts that were showing blank fields for balances, scheduled payments, and past due amounts. I also pointed out contradictions, like charged-off accounts still showing high balances months later. (See Document 1, page 3, ¶12; pages 16–31)

TransUnion responded on December 23, 2023, stating that it had completed its reinvestigation. In its response, TransUnion claimed it had either verified the information as accurate or made updates. But nowhere in that response did TransUnion address whether the information was complete. (See Document 1, page 32)

On January 6, 2025, I pulled a new report from TransUnion. That report is included in my complaint and runs from page 47 to page 81 of Document 1. In it, the same items I disputed in December 2023 were still there. More importantly, they were still missing values—dashes (---) appeared in place of data, balances were still not shown for certain months, scheduled payments were blank, and past due amounts were absent. This shows that either TransUnion never properly investigated the issues I raised, or it knowingly left incomplete items in my file.

I pointed this out clearly in my complaint. For example, I wrote:

"Despite my dispute, the inaccuracies remained unresolved as of the January 2025 report."

— Document 1, page 4, ¶18

(and repeated in ¶¶20, 22, 26, 28, 31, 34, 37, 39, 41, 43, and 46)

So if TransUnion found the information to be accurate in December 2023, why was it still missing or incomplete in January 2025? That is the key question the court did not answer.

The law is clear. Under 15 U.S.C. § 1681i(a)(5)(A):

"If, after any reinvestigation… an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the file of the consumer…"

This means a consumer reporting agency must delete an item if it is found to be incomplete, even if it is not factually inaccurate. TransUnion never proved the disputed data was complete—and my report from January 2025 proves that it was not. Therefore, TransUnion failed to meet the statutory requirement, and my claim under § 1681i(a)(5) was wrongly dismissed.

To be clear, I am not asking the court to agree with my opinion over TransUnion's. I am saying that the record shows the same disputed items remained incomplete more than a year after the reinvestigation was allegedly completed. That alone shows noncompliance with § 1681i(a)(5).

Next page is a table that lays out the sequence of facts

| Step | What Happened | Where It's Shown |
|---|---|---|
| 1 | I reviewed my credit report and found over 400 discrepancies, including missing balances, past due amounts, and scheduled payments | Document 1, Exhibit 1 (pages 16–31); Factual Allegations ¶¶15–46 |
| 2 | I submitted a written dispute to TransUnion detailing these issues | Document 1, page 3, ¶12 |
| 3 | TransUnion responded and claimed they conducted a reinvestigation | Document 1, page 32 (dated Dec. 23, 2023) |
| 4 | TransUnion claimed to verify or update some accounts but did not address missing data or delete the incomplete items | Document 1, pages 32–40 (Exhibit 2) |
| 5 | I pulled a new report over a year later, on January 6, 2025 | Document 1, page 47 (Exhibit 3) |
| 6 | The same disputed accounts still showed missing or incomplete data — nothing was deleted | Document 1, pages 47–81; Factual Allegations ¶¶15–46 |
| 7 | I alleged that TransUnion did not delete or correct the information after the reinvestigation, which they were required to do | Document 1, ¶¶49–51 (Count I) |

| Step | What Happened | Where It's Shown |
|---|---|---|
| 8 | The FCRA says incomplete or unverifiable items **must be deleted** after reinvestigation | 15 U.S.C. § 1681i(a)(5)(A) |

In addition the court erred because it treated TransUnion's superficial response as a reasonable reinvestigation, when in fact it failed the statutory requirement for they failed to delete or modify the items as appropriate. The third hird Circuit in Cushman v. Trans Union Corp., 115 F.3d 220 (3d Cir. 1997). According to Cushman, a consumer reporting agency must conduct a reinvestigation that goes beyond merely parroting information from the original source, and it cannot shift the burden of proof back to the consumer.

That is precisely what happened here: I submitted a detailed dispute identifying over 400 inaccuracies and discrepancies, yet TransUnion's response failed to show actual verification or examination of original records; instead, they Provided a general overview of the accounts included in my profile but did not identify the items disputed and how it was resolved. In addition many of the items I disputed remained in my report a year later, despite being incomplete, unverifiable, or factually deficient. Under § 1681i(a)(5), if any item "is found to be inaccurate or incomplete or cannot be verified," the agency shall delete or modify that information. TransUnion did not.

Whether or not they claim to have reinvestigated, their retention of unverifiable or incomplete data is a standalone statutory violation. The court wrongly concluded that TransUnion's response

was sufficient under the statute simply because procedural steps like sending a notice and stating that an "investigation" occurred were checked off. But § 1681i demands more.

The court compounded its error by deciding, that my claim failed—without allowing a jury to evaluate whether TransUnion's actions met the "reasonable reinvestigation" standard. Cushman explicitly forbids that: whether a reinvestigation is reasonable is a factual question for the jury, not the judge.

Furthermore the court dismissed my claim without addressing the specific statute 15 U.S.C. § 1681i(a)(5)[(A)], which I specifically pleaded. That provision imposes a mandatory obligation on consumer reporting agencies: it says that, after conducting a reinvestigation, the agency "shall delete or modify" any item of information found to be inaccurate, incomplete, or unverifiable. I pleaded facts showing exactly that—that the information I disputed either lacked factual basis or could not be substantiated by TransUnion, yet they refused to delete or correct it. The court never analyzed whether those allegations, taken as true, stated a plausible claim under § 1681i(a)(5)[(A)]. Instead, the court substituted its own legal framework by focusing on other statutory provisions—such as notice requirements (§ 1681i(a)(6)), reinsertion protocols (§ 1681i(a)(5)(B)), and the "frivolous dispute" clause (§ 1681i(a)(3))—which is not what my claim deals with under 1681i(a)(5)[(A)].

In Conley v. Gibson, 355 U.S. 41 (1957), the Supreme Court held that a complaint must not be dismissed unless it appears "beyond doubt" that the plaintiff can prove no set of facts entitling him to relief. There, as here, the court failed to evaluate the claim under the statute pleaded—instead applying a jurisdictional filter under the wrong legal framework. The Supreme Court

reversed for that very reason. Similarly, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Court reaffirmed that while Rule 8 requires factual plausibility, the sufficiency of a complaint must be measured within the contours of the claim alleged, not by reshaping or reframing the cause of action. My claim under § 1681i(a)(5) has facial plausibility because I identified specific incomplete/missing items that TransUnion failed to remove, and the court did not test the plausibility of my factual allegations under the correct provision.

In Johnson v. City of Shelby, 574 U.S. 10 (2014), the U.S Supreme Court held that federal pleading rules do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.

But I did not even misstate my theory/claim—I cited the exact statutory provision. Still, the court refused to engage with it. The court must evaluate the claim as it is pleaded.

The court sidestepped § 1681i(a)(5)—which imposes a duty to delete or modify unverifiable data, and then wrongly relied on peripheral subsections to dismiss my claim

The court further erred by relying on Sprague v. Salisbury Bank & Trust Co., 969 F.3d 95 (2d Cir. 2020), a case that has no application to the facts or statute at issue in my complaint. In Sprague, the Second Circuit dismissed the plaintiff's FCRA claim because the plaintiff never sent a dispute to the consumer reporting agency (CRA). As the court explicitly stated: "Sprague never notified the consumer reporting agency of his dispute. Absent such notice, the agency had

no obligation to reinvestigate." — Sprague, 969 F.3d at 99. That case addressed § 1681s-2(b), which governs the obligations of furnishers of information, not CRAs.

My case is entirely different. I did send a direct dispute to the CRA—TransUnion—which triggered their duties under § 1681i(a)(1)(A) to reinvestigate and under § 1681i(a)(5) to delete or modify any data found to be inaccurate, incomplete, or unverifiable. By invoking Sprague in its ruling, the court attempted to frame § 1681i as merely a procedural statute that does not require CRAs to remove disputed information, stating: "Section 1681i does not require consumer reporting agencies... to remove from a consumer report information the agency has confirmed to be accurate."

But Sprague does not support that conclusion because it never addressed § 1681i at all. It addressed an entirely separate statute involving an furnisher rather than a CRA and it turned on a procedural failure by the plaintiff to notify the CRA. My claim, by contrast, is predicated on TransUnion's failure to comply with a statutory duty that was triggered by my written dispute. Thus, the court's use of Sprague to justify its conclusion was a misdirection—a red herring that diverted attention from the real issue: whether TransUnion satisfied its obligations under § 1681i(a)(5) once it had notice and supposedly conducted a reinvestigation. The ruling improperly masked Transunion's failure behind a case that shares neither the facts nor the governing legal provision of my claim. That constitutes a misapplication of precedent and legal reasoning that warrants reversal.


The court erred by improperly deferring to the defendant, TransUnion, rather than exercising its independent judicial duty to interpret and apply the law. In its ruling, the court stated that "the

documents attached to the complaint as exhibits suggest that TransUnion complied with the procedural requirements under § 1681i." But nowhere did the court assess whether TransUnion's reinvestigation was legally sufficient under § 1681i(a)(5), which mandates deletion or modification of information that is inaccurate, incomplete, or cannot be verified. Instead, the court simply accepted TransUnion's position that it followed procedures and left the data intact, treating that conclusion as determinative. This is a legal error because it reflects deference to the agency's own judgment about both the facts and the meaning of the statute.

That kind of deference is exactly what the U.S. Supreme Court rejected in Loper Bright Enterprises v. Raimondo, 144 S. Ct. 2244 (2024), when it overturned Chevron and reaffirmed the nondelegable duty of courts to say what the law is. The Court held: "The Administrative Procedure Act requires courts to exercise their independent judgment in deciding whether an agency has acted within its statutory authority, and courts may not defer to an agency interpretation of the law simply because a statute is ambiguous." — Loper Bright, 144 S. Ct. at 2248. And quoting Marbury v. Madison: "It is emphatically the province and duty of the judicial department to say what the law is." — Id., at 2257. The court was obligated to independently determine what § 1681i(a)(5) requires, including what constitutes "inaccuracy," "incompleteness," or "unverifiability," and whether TransUnion's response satisfied that standard.

But the court failed to do that. It effectively concluded that because TransUnion labeled the data as "verified" and confirmed it "updated" certain fields, there was no legal violation—even though I specifically alleged that much of the disputed information remained false, unverifiable, or misleading. The court made no attempt to analyze whether the disputed data could be substantiated, whether the reinvestigation was meaningful, or whether the corrections (or lack

thereof) met the requirements of § 1681i(a)(5). Instead, it let TransUnion define its own compliance and sidestepped the statutory standard entirely.

Courts do not exist to rubber-stamp agency conclusions. They exist to interpret and enforce the law when jurisdiction is granted to them. The court here failed to do so. It allowed an TransUnion—to decide whether its own conduct met the statutory standard, and then dismissed my claim.

The court dismissed my § 1681e(b) claim because it believed I did not show that my credit report was inaccurate. That's incorrect. My complaint gave detailed examples of missing, misleading, and contradictory information that appeared in the report—even after I disputed it—and those facts came directly from both my factual allegations and from my legal claim in Count II.

Under § 1681e(b), TransUnion was required to use reasonable procedures to ensure the maximum possible accuracy of the information it published about me. But the report it published was missing key data, contradicted itself, and remained flawed even after I gave notice—which proves that its procedures were not reasonable.

The court dismissed my claim with this reasoning:

"The factual allegations in the complaint, taken as true and with reasonable inferences drawn in the plaintiff's favor, do not suggest that 'the challenged report is inaccurate' and TransUnion failed to comply with 15 U.S.C. § 1681e(b)."— Document 8, page 16

It also said:

"The plaintiff alleges no facts which could show that the credit report did not provide accurate overviews of the activity in and status of each account…" — Document 8, page 17

But that ignores what I actually alleged, especially in paragraphs 15 through 46, which explain what was wrong with the report, and how those problems persisted in the 2025 report even after I disputed them in 2023.

What did I Alleged in the Factual Allegations?

In Document 1, ¶¶15–46 (pages 4–10), I described the specific kinds of errors in my credit file, including:

Dash marks ("---") instead of balances, past due amounts, and scheduled payments

¶¶17, 19, 21, 25, 27, 29, 36, 38

Charged-off accounts still showing past due balances long after closure

¶30: "a past due amount is reported for the period from December 2023 through December 2024" on a closed account

Accounts simultaneously marked "closed" and still showing active balances

¶22, ¶40: showing both "closed" and "charged off" but still reporting monthly balances

Missing financial data over multiple months, such as:

"The balance is missing for January 2022"; "The past due amount is missing for February 2022"; "Scheduled payment not shown" — all from Exhibit 1, and supported in factual allegations

11

And I stated clearly:

"Despite my dispute, the inaccuracies remained unresolved as of the January 2025 report."

— See ¶18, ¶20, ¶22, ¶26, ¶28, ¶31, ¶34, ¶37, ¶39, ¶41, ¶43, ¶46

That means TransUnion had over a year to fix these problems after my December 2023 dispute—but the same data issues were still in the report I pulled on January 6, 2025 (Document 1, pages 47–81).

This proves they didn't use any system or procedure that could have caught and fixed these defects. That's a direct violation of § 1681e(b).

In Count II (Document 1, ¶¶52–59), I explained why those defects matter under the law. I stated:

"My consumer report contained numerous instances of missing or incomplete data, such as balances, past due amounts, and scheduled payments for multiple months."

— ¶55

"Other accounts reported contradictory information, such as simultaneously showing an account as both closed and active, or paid and past due."

— ¶57

"The presence of these inaccuracies and inconsistencies demonstrates that TransUnion did not follow reasonable procedures."

— ¶58

So I made it clear: the report wasn't just technically wrong, it was misleading, and TransUnion failed to catch and fix it even after I pointed it out.

This Circuit says that a report is inaccurate when it is:

"patently incorrect or... misleading in such a way and to such an extent that it can be expected to have an adverse effect."

— Mader v. Experian, 56 F.4th 264, 269 (2d Cir. 2023)

That's exactly what happened here. My report was missing monthly data. It had dash marks. It showed balances that didn't make sense on closed accounts. That's misleading to any lender reading it. It could make me look irresponsible, suspicious, or incomplete—all of which can hurt my ability to get credit.

That's not just my opinion. That's what the law says counts as an "inaccuracy." Instead of recognizing that missing or contradictory information can be misleading, the court focused only on whether the items were "technically false." That's the wrong legal standard.

The court said:

"The plaintiff alleges no facts which could show that the information... is misleading in such a way... that it can be expected to have an adverse effect."

— Document 8, page 16

But I did. I gave dozens of examples of misleading omissions and inconsistencies. And I said directly in ¶68 of my complaint that these issues hurt my creditworthiness and made it harder for me to incur debt and acquire property.

13

Furthermore the statutory command of 15 U.S.C. § 1681e(b) imposes a non-discretionary duty upon consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy." This duty is absolute. Yet the court has permitted Transunion to evade this legal obligation by accepting the notion that such an entity is a mere "assembler" of information provided by furnishers and are therefore not required to independently validate, reconcile, or correct inaccurate or contradictory data. Which contradicts the statute 1681e (b).

Congress did not leave room for interpretive downgrades when it enacted 15 U.S.C. § 1681e(b). The statute states in clear and commanding terms:

"Every consumer reporting agency shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." — 15 U.S.C. § 1681e(b) (emphasis added).

This provision imposes a [non-discretionary] duty on CRAs to implement procedures that reach the highest attainable level of factual and structural correctness. Yet in its reasoning, the court, like many others before it, silently replaces this heightened standard with judicially created proxies like "not patently incorrect" or "not materially misleading."

The cases cited by the court—Mader v. Experian, 56 F.4th 264 (2d Cir. 2023), Shimon v. Equifax, 994 F.3d 88 (2d Cir. 2021), and similar authorities—follow this same erroneous pattern. In Mader, the Second Circuit referenced "accuracy" as simply "freedom from mistake or error,"

without engaging the distinct statutory phrase "maximum possible accuracy" at all. The word "maximum" never appears in the court's reasoning. Likewise, Shimon defines inaccuracy as something that is "patently incorrect or misleading to such a degree that it can be expected to cause harm."

The law doesn't just tell credit agencies to fix mistakes after they happen. It tells them to have strong systems in place that stop mistakes from happening in the first place. If a court ignores that part of the law—the part that says they must aim for the highest level of accuracy possible—then the court isn't applying the law the way it's written.

Such practice mirrors the very dysfunction the Supreme Court corrected in Loper Bright Enterprises v. Raimondo, 144 S. Ct. 2244 (2024), when it decisively overruled Chevron. In that case, the Court reminded us that:

"It is emphatically the province and duty of the judicial department to say what the law is." — Loper Bright, 144 S. Ct. at 2257 (quoting Marbury v. Madison).

They also said:

"This Court's opinions fill over 500 volumes, and perhaps 'some printed judicial word may be found to support almost any plausible proposition.' R. Jackson, Decisional Law and Stare Decisis, 30 A. B. A. J. 334 (1944). It is not for us to pick and choose passages we happen to like and demand total obedience to them in perpetuity. That would turn stare decisis from a doctrine

of humility into a tool for judicial opportunism." — Loper Bright, 144 S. Ct. at 2266 (citing Brown v. Davenport, 596 U.S. 118, 141 (2022)).

That warning bears directly on this court's invocation of Mader and Shimon. While these precedents may supply convenient quotations, they do not represent a full or faithful engagement with the statutory language at issue in this case. As Justice Jackson warned, courts must not "comb through opinions searching for delphic answers to matters we never fully explored." — Brown v. Davenport, 596 U.S. at 141.

Mader and its progeny did not explore "maximum possible accuracy"; they merely addressed the more general notion of factual truth. Accordingly, their application here is inapt and misleading.

The Supreme Court in Loper Bright explicitly rejected the notion that prior decisions, once announced, must govern forever:

"Just because we decided something in the past doesn't mean we have to stick with it forever—especially if the decision was wrong or unworkable." — Loper Bright, 144 S. Ct. at 2265.

And quoting Payne v. Tennessee, the Court reaffirmed:

"Stare decisis is not an 'inexorable command.'" — 501 U.S. 808, 828 (1991).

Thus, when courts apply precedents like Mader or Shimon that never analyzed the "maximum possible accuracy" standard, they are not honoring stare decisis—they are misapplying it. Those cases were about something different and using them to decide my case is wrong. The court would be going beyond its job by applying rules that don't fit this law.

"To proceed otherwise risks 'turn[ing] stare decisis from a tool of judicial humility into one of judicial hubris.'" — Loper Bright, 144 S. Ct. at 2266.

That is precisely the risk here. The court should not have imposed a one-size-fits-all standard—designed for allegations of discrete falsity—onto a statutory claim concerning systemic procedural failure to attain "maximum possible accuracy." The very use of that phrase by Congress imposes an elevated burden, and it is not satisfied by showing that the report was "not technically false." Each word in a statute must be given meaning, and Congress chose not to say "reasonable accuracy," or "non-misleading accuracy," but maximum possible accuracy.

Judicial integrity requires more than mechanical loyalty to precedent; it demands honest re-evaluation of whether past decisions still align with the the statute at issue. Courts have issued thousands of decisions, and quotations can be harvested from nearly any of them to support almost any proposition. That does not mean they are all equally applicable or sound. What governs is not convenience, but constitutional responsibility, and statutory duty under the APA.

The court dismissed my claim by pointing to other cases—Houston, Lopez, Watson, and Obabueki—as if they settle the issue. But those cases don't deal with what I'm raising here. Those decisions focused on whether a credit report contained a false statement. That's not the same thing as what the law in § 1681e(b) requires. That law doesn't just say the information has to be technically correct—it says the credit reporting agency must use "reasonable procedures to assure maximum possible accuracy." That's a higher standard. It means they have to make sure the system itself doesn't cause confusion, omission, or misleading impressions—even if each line item by itself seems okay.

In Houston, the court said that if the data isn't wrong, then there's no need to even look at whether the company followed reasonable procedures. But that ignores what Congress actually wrote. Congress made the procedures the heart of the law. The law isn't just about catching errors—it's about preventing them through strong systems. That's what I'm challenging: a broken system that leaves out key data, uses strange symbols, reports things inconsistently, and makes it impossible to see a clear and accurate picture.

Same thing with Lopez and the other cases. They want the plaintiff to point to one piece of information and say "this is false." And I did such, but its not just that. I'm saying the way the information is put together—the formatting, the missing months, the contradictions—makes the whole thing misleading and incomplete. That's not about a single mistake. That's about a system failure, and those cases don't deal with that.

Then the court said that TransUnion is just a company that "assembles" data from other sources, quoting the law at § 1681a(f). That part of the law just defines what a consumer reporting agency is. It does not say they can ignore their duty under § 1681e(b). It doesn't say that just because they collect data from others, they're off the hook. In fact, it's because they collect data and report it that the law holds them to this standard. Assembling data doesn't mean you get to assemble it badly.

Congress made this crystal clear in § 1681(3), where it says that consumer reporting agencies have assumed a vital role in our financial system. They weren't forced into it. They chose to be the gatekeepers of credit, housing, jobs, and more. That means they've taken on a serious legal responsibility. And as § 1681(2) explains, this system was built as an elaborate mechanism to investigate and evaluate people's credit and character. You can't just do that sloppily and say, "Well, we're just assembling data." That's not good enough under the law.

The court dismissed my claim under § 1681n because it said I didn't show that TransUnion violated any part of the Fair Credit Reporting Act. The judge wrote:

"A plaintiff cannot state a claim under Section 1681n unless that plaintiff has shown that the defendant has violated some other provision of the FCRA. The complaint fails to do so."

— Document 8, page 21

I understand that the law says § 1681n only applies if a company **willfully violates** some other part of the FCRA. But I did show that TransUnion violated the law. In fact, I gave clear details in my complaint showing that TransUnion:

1. **Did not delete or fix incomplete information** after I disputed it — a violation of § 1681i(a)(5)

2. **Did not follow reasonable procedures** to make sure my report was accurate — a violation of § 1681e(b)

I sent TransUnion a dispute letter in **December 2023** pointing out over 400 problems. They responded and said they did an investigation. But when I pulled my credit report again in **January 2025, the same missing and wrong information was still there**.

That shows they didn't fix the problem. And if they had time, and they were told what was wrong, but still didn't correct it — that's not just a mistake. That's **willful**. It shows they didn't care or didn't take the law seriously.

The court dismissed § 1681n only because it had already dismissed Counts I and II. But that was a mistake. My complaint showed real problems with how TransUnion handled my file, and they

had over a year to fix it. That's enough to let the case go forward and decide later if what they did was willful.

Because I did show violations of the FCRA, and I gave facts that show TransUnion acted with disregard for my rights, the court was wrong to dismiss my claim under § 1681n.

The record leaves little doubt as to where the court went wrong. I brought a claim under § 1681i(a)(5), alleging that TransUnion failed to delete or modify incomplete or unverifiable information after a reinvestigation. The court dismissed that claim by treating TransUnion's verification as the end of the inquiry, without addressing the statute's separate requirement that information also be complete. I brought a claim under § 1681e(b), alleging that TransUnion failed to follow reasonable procedures to ensure maximum possible accuracy. The court rejected it by narrowly focusing on whether the data was technically false, ignoring that the report contained omissions, contradictions, and misleading formatting that made it incomplete and inaccurate. And lastly I brought a claim under § 1681n for willful noncompliance, supported by facts showing that TransUnion was notified of specific defects and failed to act on them for over a year. The court dismissed it solely because it had already rejected the aforementioned violations, without evaluating whether those facts supported a claim of willfulness.

For the reasons stated above the court should reverse its ruling should allow me to proceed, and I don't wish to amend because I wholeheartedly believe that all my claims are properly pleaded.

Respectfully submitted,

Laguerre Lensendro

26 Broad Street, Apt. 4

Norwalk, CT 06851